UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 13-101-EBA

STEVEN R. PATRICK,                                                                                      PLAINTIFF,

V.                    **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,                                                                DEFENDANT.

On September 29, 2010, the Plaintiff, Steven R. Patrick, filed a Title II application for a period of disability and disability insurance benefits. He also filed a Title XVI application for supplemental security income on February 1, 2011. In both applications, he alleged the onset of disability on January 10, 2009. [TR. 17]. The claims were denied initially on February 22, 2011, and upon reconsideration on May 4, 2011. [TR. 17]. He sought and was granted a hearing, where he appeared and testified before an Administrative Law Judge [ALJ] on April 30, 2012. [TR. 17]. On May 30, 2012, the ALJ denied his applications for benefits, finding that Patrick was not disabled under the Social Security Act. [TR. 28]. The Appeals Counsel denied his request for review on August 12, 2013, and on September 14, 2013, Patrick filed the complaint in this action. [R. 1]. He and the Defendant now seek summary judgment, and the matter is ripe for review. For the reasons stated more fully below Patrick's Motion for Summary Judgment R. 12] will be DENIED, and the Defendant's Motion for Summary Judgment [R. 13] will be GRANTED.

**FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the alleged onset of disability, Patrick was a high school educated 50 year

old male, with some vocational training in welding and a past employment history of working as a canteen clerk, material handler and shipper. He ceased employment in January 2009, due to poor circulation in his arms and legs, diabetes, asthma, high cholesterol, high blood pressure, arthritis, and acid reflux. [TR. 181]. At step one of the sequential evaluation process, the ALJ determined that Patrick had not engaged in substantial gainful activity since the alleged onset of his disability. At step two, the ALJ found Patrick to have the following severe impairments: lumbar strain; osteoarthritis; reduced visual acuity; asthma; diabetes mellitus; and obesity. Although the ALJ determined that Patrick suffered from hypertension, hyperlipidemia, gastroesophageal reflux disease (GERD), and a hiatal hernia, he found that these were non-severe impairments. At step three, the ALJ determined that Patrick does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Considering the evidence before him, the ALJ found that Patrick had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he is limited to occasional climbing, stooping, kneeling, crouching, and crawling. In addition, he must avoid concentrated exposure to excessive vibration and irritants such as fumes, odors, dust, gasses, and poorly ventilated areas. Finally, the ALJ opined that Patrick is limited to occupations that do not require 20/20 vision. In light of this residual functional capacity, at step four of the sequential evaluation process, the ALJ found that Patrick was unable to perform any of his past relevant work as a canteen clerk, material handler and shipper, which was listed in the Dictionary of Occupational titles as medium and heavy work, respectively. Finally, at the fifth and final step of the sequential evaluation process, the ALJ asked vocational expert, Leah P. Salyers, whether jobs exist in the national economy for an individual with Patrick's age, education, work experience,

and residual functional capacity. The expert testified that given these factors, the individual would be able to perform the requirements of occupations such as Product Packager and Counter Cashier, Machine Monitor, and Product Grader and Sorter, in the light and sedentary exertional levels, respectively. [TR. 42]. Finally, the expert testified that these occupations exist in significant numbers in the national economy. Therefore, the ALJ found Patrick "not disabled" and denied his claims for benefits.

He filed a complaint in the instant action seeking review of the decision on September 14, 2013. [R. 1].

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." Longworth v. Comm'r Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001)(quoting Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must be upheld if it is supported by substantial evidence. Foster, 279 F.3d at 353.

## ANALYSIS

In this action, the Plaintiff seeks an order either reversing the Commissioner's decision

and remanding the action for an award of benefits, or remanding the matter back to the ALJ for further consideration.[R. 1].   In support of these demands for relief, he alleges that the ALJ committed the following errors: (1)  failed to consider Mr. Patrick's diagnosis of GERD as a severe impairment; (2) erred in finding that Patrick's back pain, knee pain and shoulder pain were non-medically determinable impairments; (3)  inaccurately assessed a residual functional capacity "which resulted in the ALJ failing to following [sic] Step Two of the five step sequential evaluation process"; (4) erred in relying on the medical opinion of an anesthesiologist, who did not examine Patrick, nor did he have the opportunity to review the complete file; and (5) failed to give adequate reasons for assigning little weight to the treating physician and greater weight to a non-examining consulting physician.  However, for the reasons that follow, Patrick does not justify the relief he requests, and his motion for summary judgment will be denied.

**I.        a.  Whether Mr. Patrick's diagnosis of GERD is a severe impairment.**

Patrick relies on the statement by Dr. Short, a claimed treating physician, that his GERD causes frequent coughing due to the reflux of acid up into the bronchi and lungs and, as a result, he is unable to lie flat.  Therefore, Patrick contends, his GERD should have been found to be a severe impairment.  However, an ALJ does not commit reversible error simply by finding an impairment to be non-severe where other impairments are found to be severe.  This is because an ALJ may still consider non-severe impairments when determining a claimant's residual functional capacity and therefore his ability to engage in substantial gainful activity.  As stated in Mazairz v. Sec'y Health & Human Serv.,  837 F.2d 240, 244 (6th Cir. 1987), "[s]ince the Secretary properly could consider claimant's [non-severe cervical impairment] in determining whether claimant retained sufficient residual functional capacity to allow him to perform

substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error." Therefore, as the ALJ found Patrick to have the severe impairments of lumbar strain; osteoarthritis; reduced visual acuity; asthma; diabetes mellitus; and obesity, he did not commit reversible error in failing to find Patrick's GERD to be severe. As stated above, the ALJ may still consider what he believes are non-severe impairments, in this case GERD, in determining a claimant's residual functional capacity and therefore the claimant's ability to engage in substantial gainful activity. See also McGlothlin v. Comm'r, 299 F.App'x 516, 522 (6th Cir. 2008)(finding it "legally irrelevant" that the ALJ determined that some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

Therefore, the ALJ's decision to consider Patrick's diagnosis of GERD as a non-severe does not constitute error that requires reversal of the decision denying benefits.

**b.  Whether Patrick's back pain, knee pain and shoulder pain are non-medically determinable impairments.**

Here, Patrick claims that the medical evidence clearly supports his testimony regarding impairments due to these areas of pain, and how they limit his ability to sit, stand and walk. He relies on a letter from Dr. Short dated April 3, 2012, in which the physician states that Patrick suffers from chronic low back pain, chronic bilateral knee pain and bilateral shoulder pain. [TR. 408]. Patrick also relies on the opinion of Dr. Guberman where he noted on exam that Patrick ambulates with antalgic gait, demonstrates moderate tenderness in his thoracic and lumbar spine, scoliosis, 0 degrees straight leg raising bilaterally, moderate tenderness and moderate crepitation

5

in both knees with an inability to extend the right knee beyond 20 degrees of flexion.  Patrick points out that Guberman stated that the examination reveals range of motion abnormalities of the cervical spine, thoracic spine, lumbar spine, both shoulders, right elbow, both hands, knees, left ankle, left hindfoot and both hips. [Tr. 416].  Finally, Patrick relies on the state agency examiner, Dr. Kip Beard, who found mild pain with tenderness of the knees, right worse than left, patellofemoral crepitus, and chronic pain.   As a result, Patrick contends that the ALJ incorrectly stated that Patrick's chronic low back pain, chronic bilateral knee pain and bilateral shoulder pain were non-medically determinable impairments, as he did not consider these "disabilities" as severe impairments.   However, pain is not a medically determinable impairment, but a symptom of an impairment. See 20 C.F.R. 404.1508, 416.929 (defining an impairment), 404.1528(a), 416.928(a)(defining a symptom), 404.1529, 416.929 (recognizing pain as a symptom). When considering symptoms of pain, an ALJ is required by the Federal Regulations to consider pain on the basis of any medically determinable impairment which can be shown to cause the symptom:

> If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness).   We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms.  The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom.  We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.

McCormick v.  Sec'y Health & Human Serv., 861 F.2d 998, 1003 (6th Cir. 1988)(citing 20 C.F.R. § 404.1529 (1988)). This being said, the record reveals that the ALJ found that Patrick's stated impairments could cause the alleged symptoms of pain, but did not find Patrick's testimony regarding the intensity, persistence and limiting effects of the symptoms to be fully

credible in light of the objective medical evidence of record. [TR 19-21].

In considering the issue of whether medically determinable impairments were serious enough to cause the extent of pain related by Patrick, the ALJ afforded little weight to Dr. Guberman's opinions  ("Additionally, the doctor's overly restrictive opinion, especially regarding the postural limitations, is based on a single interaction with the claimant and is inconsistent with the objective medical evidence of record as described above") and Dr. Short ("The undersigned affords little weight to the questionnaire completed by Dr. Short, since it endorses limitations that are grossly out of proportion to the objective evidence of record."). [TR. 22].

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record.  The credibility of the claimant's allegations is weakened by inconsistencies between his allegations, his statements regarding daily activities, and the medical evidence.  Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.   The claimant does experience some limitations but only to the extent described in the residual functional capacity above.

[TR. 22-23].

As a result, the record reflects that the ALJ correctly incorporated any restrictions secondary to medically determinable impairments into the hypothetical which led to the conclusion that Patrick is capable of performing jobs that exist in significant numbers in the national economy. In doing so, he articulated adequate reasons for giving more weight to some and less weight to other medical opinions.  Patrick's claims to the contrary are without merit, and provide him no relief in this action.

**II.  Whether the ALJ erred in relying on an anesthesiologist, who did not examine Patrick**

**and did not have the opportunity to review Patrick's complete file.**

Patrick contends that the ALJ gave great weight to a non-treating, non-examining physician, Dr. Timothy Gregg, whose specialty is anesthesiology. Dr. Gregg, he argues, did not have the opportunity to examine Patrick or even his complete medical file. He contends that the ALJ erred in giving greater weight to Dr. Gregg's opinions, and failing to give controlling weight to Patrick's treating physician, Dr. Short. In considering the weight to give an opinion, the ALJ considers several factors, "Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). These factors include: (1) the Examining relationship, (2) Treatment relationship, (i) Length of the treatment relationship and the frequency of examination, (ii) nature and extent of the treatment relationship, (3) Supportability, (4) consistency, and (5) specialization. Id. Although Patrick contends that Gregg is an anesthesiologist, that does not require the ALJ to give less weight to his opinion, as specialty is only one factor for an ALJ to consider.

20 C.F.R. 404.1527(5) requires, generally, that more weight be given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. Patrick argues that Dr. Gregg did not consider a questionnaire completed by Dr. Short, in which the physician stated that she agreed with Dr. Guberman's assessment that Patrick would be able to sit no longer than about 20 minutes and stand and walk for no longer than 20 minutes. [R. 12, TR 408]. In summary, Dr. Short believed that Patrick would not be able to maintain work 8 hours a day and 5 days a week. [Tr. 422]. Patrick believes that if Gregg had the opportunity to review this supplemental information, he may have agreed,

and cites the case of Jones v. Astrue, 808 F.Supp.2d 993 (E.D. Ky. 2011) for the proposition that the case should be remanded for further consideration where the ALJ rejected the treating physician's opinion, which was properly supported by objective medical evidence in favor of non-reviewing examiners who did not review the complete record.

Finally, Patrick contends that the ALJ did not give adequate reasons for discounting the RFC and opinions of Dr. Short, and argues that the ALJ discounted the treating physicians' RFC by relying on forms completed by Patrick more than one year before Dr. Short and Dr. Guberman issued their opinions. In addition, he contends that the ALJ misconstrued Patrick's statements, and does not provide sufficient evidence on which to discount the RFC incorporating Dr. Guberman's recommended physical restrictions.

However, as Dr. Short only saw Patrick on one occasion, he is not a "treating source". Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007). "A physician qualifies as a treating source if the claimant sees her ' with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" 20 C.F.R. § 404.1502. A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition. Id. As in Smith, Patrick's contacts with Dr. Short fail to "evince the type of ongoing treatment relationship contemplated by the plain text of the regulation. Id. (citations omitted). Therefore, Short should not be considered a treating source. However, even if Short was a treating source, the ALJ gave good reasons for choosing not to give her opinion controlling weight. As stated above, Dr. Short was of the opinion that Patrick would be able to sit no longer than about 20 minutes and stand and walk for no longer than 20 minutes. [R. 12, TR 408]. In summary, Dr. Short believed that Patrick would not be able to maintain work 8 hours a day and 5 days a week. [Tr. 422].

However, the ALJ found these opinions to be inconsistent with the objective medical evidence of record, including examination findings showing Patrick's ability to stand was not inhibited because he could stand unassisted, rise from a seated position, step up and down from an examination table, exhibited full strength, and stand on one leg at a time without difficulty. [TR 19, 326-28]. In addition, Patrick was not limited in his ability to sit and lie flat during examination. [TR 326]. Examinations from HFMC were consistently normal without evidence of joint pain, tenderness or deformity, with a full range of motion in all major joints. [TR. 20, 367, 382, 389, 393]. Finally, the ALJ explained that the limitations recommended by Dr. Guberman were unsupported by the evidence of record. [TR. 22]. The objective evidence showed no significant limitations walking as his gait was not unsteady or unpredictable, and he did not need assistance to ambulate, could walk on heels and toes, and demonstrated a tandem gait. [TR. 19, 327,-28]. Likewise, he could balance to stand on one leg, and squat. [TR. 20, 327-28, 367, 32, 389, and 393]. Therefore, a review of the record shows that the ALJ gave good reasons for giving little weight to Dr. Short's opinions. Once doing so, he was entitled to rely on the opinions of state agency physicians whose opinions were consistent with the objective medical evidence of record. See 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A.).

     The ALJ's opinions were properly supported by substantial evidence of record. He gave good reasons for according little weight to some opinions and greater weight to others. Therefore, his opinion should be upheld.

## **CONCLUSION**

     Therefore, for the foregoing reasons, it is ORDERED that the Plaintiff's Motion for Summary Judgment [Record No. 12] be DENIED, the Defendant Commissioner's Motion for

Summary Judgment [Record No. 13] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

This the 14th day of January, 2015.

Signed By:
Edward B. Atkins  EBA
United States Magistrate Judge